UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Keith Kreszowski,                                    Case No. 3:20-cv-1936

        Plaintiff,

    v.                                                MEMORANDUM OPINION
                                                                           AND ORDER

United Automobile, Aerospace and Agricultural
Implement Workers of America, Local 12,

        Defendant.


## I.    INTRODUCTION

This case is the third lawsuit Plaintiff Keith Kreszowski has filed arising out of his prior employment with FCA US LLC. (*See* Case No. 3:17-cv-2371; Case No. 3:19-cv-2989; and Case No. 3:20-cv-1936). Here, Kreszowski asserts four claims under federal and Ohio law alleging discrimination based on a perceived disability and retaliation. (Doc. No. 1). FCA no longer is a party to this litigation, (*see* Doc. No. 20), and only Kreszowski's claims against his former union, Defendant United Auto Workers Union, Local 12 Region 2B ("UAW Local 12"), remain. The parties have completed briefing on cross-motions for summary judgment. (Doc. Nos. 70, 71, 72, 75, 76, and 77). Additionally, Kreszowski has filed a motion for leave to file a reply brief in response to new arguments in UAW Local 12's brief in opposition to his summary judgment motion. (Doc. No. 78). For the reasons stated below, I deny both of Kreszowski's motions and grant UAW Local 12's motion for summary judgment on all claims.

## II. BACKGROUND

It is "[a] fundamental precept of common-law adjudication . . . that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54.

I previously entered summary judgment in favor of FCA and UAW Local 12 on Kreszowski's disability discrimination and retaliation claims in the 2017 and 2019 cases. (*See* Doc. No. 65, Case No. 3:17-cv-2371; Doc. No. 33, Case No. 3:19-cv-2989). My rulings were upheld on appeal before the United States Court of Appeals for the Sixth Circuit. *Kreszowski v. FCA US, LLC*, Nos. 21-3730/3733, 2022 WL 782664 (6th Cir. Mar. 15, 2022), *cert. denied,* 143 S. Ct. 243 (2022). The parties had a full and fair opportunity to litigate the facts underlying Kreszowski's claims in those cases, and I hold that they are bound by any "factual finding which was necessary to support the judgment in [those] prior proceeding[s]." *N.L.R.B. v. Master Slack &/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985).

The Sixth Circuit summarized the summary judgment record in this way:

> Keith Kreszowski began working for FCA in its Toledo, Ohio automotive manufacturing facility in July 2013 and was a member of the Union. . . . On September 30, 2016, Kreszowski hit the "abort" button to shut down an alignment machine when he perceived that his coworker Ken Sukalo had created a safety hazard by walking away from the machine. This caused production throughout the assembly line to shut down for ten to fifteen minutes. Kreszowski's supervisor, Nichole Banks, spoke to his coworkers about the incident and then issued him a verbal warning for failing to follow safety procedures.

In the conversation with Banks, Kreszowski was admittedly "upset," acknowledging that he had reacted with a "certain level of emotion." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 184–85. He stated that he did not yell or scream, but that he raised his voice to be "firm" and probably used hand gestures. *Id.* at 185. Kreszowski felt the discipline was unwarranted and was frustrated Banks had spoken to other coworkers about the machine shutdown rather than asking for his "side of the story." *Id.* He told Banks he would contact the Occupational Safety and Health Administration ("OSHA"), stating "with all the safety issues we got here . . . I could call OSHA up; they could come out here today and shut the plant down." *Id.* at 186. In addition to communicating this sentiment to Banks, Kreszowski spoke to the Union Safety Coordinator Rex Maze and team leader Dianna Kurth about his intention to contact OSHA.

Kreszowski requested and was granted a day off on October 7, 2016, so he could file an OSHA complaint. At 4:10 a.m., Kreszowski sent a text message to Kurth asking for Nichole Banks's last name for his OSHA complaint. Kreszowski then sent multiple text messages at 5:00 a.m. to another plant manager expressing that he was scared to return to work because he felt his health and safety were compromised at FCA and thought that Sukalo was dangerous. Kreszowski filed an OSHA retaliation charge claiming that he was disciplined and harassed because he made an internal complaint about alleged safety issues. OSHA investigated the complaint and ultimately dismissed it without action.

An FCA human resources manager contacted FCA's Corporate Labor Relations Department and reported that Kreszowski exhibited certain concerning behaviors for the facility. Accordingly, the Local Response Team ("LRT"), a group of individuals from FCA and Union leadership, was called to meet. The LRT is a trained group designed to allow management and the Union to work together to address concerns or troubling incidents; it also identifies and refers employees having problems to the Employee Assistance Program ("EAP"). The LRT met with Kreszowski on October 10, 2016, and Kreszowski presented a document outlining concerns about his safety if he returned to work under Banks's supervision and alongside Sukalo. Kreszowski also expressed concern about being subject to retaliation and a hostile work environment. During the meeting, Kreszowski was "excited" and "[a] little nervous," and he recalled using hand gestures and speaking faster and louder. Union representative and LRT member Mark Epley described Kreszowski as "very agitated" and noted he "was slamming his fist on the table [and] seemed almost out of control." 3:17-cv-2371, DE 50-12, Mark Epley Decl., Page ID 633.

At this meeting, Epley asked FCA human resources representative Connie Rubin to remove the discipline from Kreszowski's record, and Rubin agreed to do so. At the end of the meeting, Rubin said that Kreszowski could return to work. However, Kreszowski informed the LRT that he was not confident about returning to the workplace because he was concerned about Banks and Sukalo creating an abusive work environment. FCA accordingly excused him for the rest of his shift. That evening, Kreszowski contacted Epley and reiterated his concerns about returning to work; he requested an additional vacation day and asked to meet again with the LRT. On October 13, 2016, Kreszowski and the LRT met again. Again, Kreszowski

3

expressed safety concerns with Sukalo that he felt had not been fully investigated and frustration that he had been disciplined while Sukalo had not. He provided the LRT with another document of his concerns, in which he requested relocation to another job assignment and stated, "[t]he frustrations and repetitive actions that have occurred within the group has put myself in [an] emotional state that is detrimental, and I am attempting to eliminate[ ] that state of mind due to the environmental conditions that exist. I cannot have that continue." 3:17-cv-2371, DE 49-3, Kreszowski October 13, 2016 Letter, Page ID 250–51.

When a member of the LRT asked Kreszowski if he could guarantee that he would not harm someone if he returned to work, Kreszowski "never said [he] would harm anybody," but said he was concerned about the disciplinary repercussions of shutting down a machine and consequently "could end up harming myself or somebody else." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 198. Epley stopped Kreszowski and told him to choose his words carefully. Kreszowski asked to take a few more days off before returning to work, and the meeting participants verbally agreed that he would go on a personal leave of absence with a return-to-work date of October 24, 2016. That evening, Epley called Kreszowski and notified him that there were concerns about Kreszowski's responses to certain questions during the LRT meeting. The following day, Tonya Tooson (a Union member of the LRT and EAP representative) called Kreszowski and informed him he would need to complete a fitness-for-duty examination before returning to work.

Kreszowski attended a psychological assessment with Dr. James Knowles on October 19, 2016. Dr. Knowles told Kreszowski that he wanted to see him further before giving him permission to return to work. Kreszowski texted Tooson about his returning to work on October 24, but she called him and informed that he could not return until he had been approved as fit for duty and that he would be on personal leave. Kreszowski disagreed with the characterization of the leave as "personal," as opposed to disciplinary or medical, describing it as a nonconsensual "forced" leave of absence. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 200–01, 204–05. Meanwhile, FCA entered an absence code to protect his seniority under the collective bargaining agreement.

On October 25, 2016, Kreszowski filed a charge of disability discrimination with the Ohio Civil Rights Commission ("OCRC"). He alleged that FCA discriminated against him because of a perceived disability by disciplining him and subjecting him to different employment terms and conditions by giving him a "forced personal leave of absence" and a "denial of medical leave." 3:17-cv-2371, DE 49-4, OCRC Charge, Page ID 252.

Dr. Knowles and Kreszowski met three more times between October 26 and November 22, 2016. On November 28, 2016, Dr. Knowles sent a final assessment to Jo'Lena Brown, FCA's Corporate Union Relations Specialist, in which he released Kreszowski to return to work and recommended that Kreszowski engage in appropriate treatment and complete anger management classes. Dr. Knowles noted that Kreszowski denied any intention of harming anyone, and that he interacted appropriately for three of their sessions but was uncooperative during the fourth and final appointment. Kreszowski stated his relationship with Dr. Knowles "was

4

adversarial from day one" because he believed the doctor was deceitful. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 203–04.

Brown notified Kreszowski that he had been reinstated, and Kreszowski returned to work at FCA on November 30, 2016. Problems arose within six hours of his return: Kreszowski complained to human resources and Brown that he was experiencing a hostile work environment created by Sukalo and other coworkers. Kreszowski continued to worry that there could be retaliatory actions or hostile work conditions directed toward him, and he felt harassed by Sukalo, who ignored him in one instance, and by another coworker who seemed "upset and angry" with him. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 208–10. Kreszowski continued to raise complaints to both local and corporate FCA management and human resources between December 2016 and February 2017. The complaints escalated into a charge of discrimination against the Union, which Kreszowski filed with the OCRC on February 8, 2017. Kreszowski alleged the Union had denied him representation on "October 13, 2016 and continuing" because of a perceived disability. . . . 3:17-cv-2371, DE 23-3, OCRC 2017 Charge, Page ID 107.

After Kreszowski sent repeated emails to FCA Group's Chief Executive Officer and FCA North America's Chief Human Resources Officer referring to "continued bias" against him, FCA's Equal Employment Opportunity Investigation Compliance Coordinator, Vicki Patterson, contacted Kreszowski to address his concerns. 3:17-cv-2371, DE 54-3, Patterson Decl., Page ID 919. Patterson stated that Kreszowski sent her multiple lengthy emails detailing numerous complaints about the LRT's actions, his Union representation, and matters addressed in OSHA and OCRC complaints. Patterson explained to Kreszowski that her investigation would be limited to Kreszowski's claim that his supervisor had harassed him in violation of FCA policy. Kreszowski accused Patterson and her office of bias, describing "widespread chronic abuse from your management and union officials within the Toledo Assembly Complex and beyond." 3:17-cv-2371, DE 49-8, Patterson Emails, Page ID 341. Patterson interviewed Kreszowski for more than three hours; she also interviewed Sukalo, Tooson, each member of the LRT, and additional coworkers. Sukalo informed Patterson he had considered retiring from FCA "because of the continued harassment to which Kreszowski subjects him." 3:17-cv-2371, DE 54-3, Patterson Decl., Page ID 921. . . .

In April 2017, FCA laid off Kreszowski and other employees as part of a plant-wide retooling. During this layoff, Kreszowski sent "a couple dozen" emails to FCA officials. . . . The plant was scheduled to resume operation and return employees from layoff in October 2017. However, the volume of Kreszowski's emails and management's ongoing concerns about Kreszowski's behavior culminated in a meeting with corporate human resources managers and FCA's chief medical officer, who determined that a meeting with Kreszowski should be held before he returned to work. Roy Richie, a labor relations manager, met with Kreszowski on October 16, 2017, at the local Union hall. At this meeting, Kreszowski raised concerns about his 2016 leave of absence and perceived safety issues; Kreszowski's OSHA and OCRC complaints were also discussed. Kreszowski stated that he believed various human resources employees and Union members had "evil intentions" toward him

and that their employment should be terminated before he could return to work as a productive employee. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 225.

Following this meeting, Richie determined that Kreszowski could not return to work until he completed another fitness-for-duty examination. FCA placed Kreszowski on "company-paid business," a payroll code that ensured his pay would not be interrupted. Richie stated Kreszowski "did not receive that information well." 3:17-cv-2371, DE 52, Roy Richie Dep., Page ID 816. Kreszowski met with Dr. Craig Lemmen on October 30, 2017 for his examination. Dr. Lemmen opined that Kreszowski did "not pose a significant risk of harm to himself or others at the workplace." 3:17-cv-2371, DE 54-2, Lemmen Report, Page ID 915. He also opined, however, that Kreszowski had "a psychiatric problem which interferes with his ability to positively interact with co-workers and supervisors." *Id.* at 916. Dr. Lemmen noted that time off from work would be helpful for Kreszowski to engage in psychotherapy treatment to reduce problematic interactions. *Id.* at 916–17.

On November 13, 2017, Kreszowski filed a second OCRC charge against FCA. He alleged FCA denied him recall from the layoff, forced him onto sickness and disability pay, and forced him to cooperate with the October 2017 fitness-for-duty examination as retaliation for his October 25, 2016 OCRC charge. He formally withdrew the charge in January 2018 to pursue litigation instead.

In accordance with Dr. Lemmen's recommendation, Kreszowski made an appointment with Dr. Kettlie Daniels, who provided certification to FCA so Kreszowski would be covered by the appropriate medical leave plan. Kreszowski's relationship with Dr. Daniels was not a constructive one; he was under the impression Dr. Lemmen had given Dr. Daniels a treatment plan for him, while she believed she was to conduct a medical evaluation. Kreszowski did not trust Dr. Daniels and believed she was colluding with FCA by "start[ing] a treatment plan with falsehoods." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 229. Dr. Daniels diagnosed Kreszowski with an adjustment disorder and provided certification for medical leave. Following the diagnosis, their relationship deteriorated. Kreszowski accused Dr. Daniels of participating in an FCA conspiracy meant to "project hostility and hardship upon [him]" and called her "an incompetent professional that is doing harm." 3:17-cv-2371, DE 49-16, Kreszowski Emails, Page ID 419. Dr. Daniels terminated treatment and the doctor-patient relationship in April 2018.

In July 2018, FCA contacted Kreszowski to inform him his medical certification had been valid only through May 1, 2018, and since then he had been absent without medical substantiation. FCA sent a list of potential physicians and resources, and it directed him to make an appointment by the end of the month in order to continue his sickness and accident benefits. Kreszowski made an appointment to be evaluated at Harbor Behavioral Health ("Harbor") and submitted details of the appointment to FCA. Because he provided details of the upcoming appointment to FCA, his sickness and accident benefits were reinstated and paid through August 13, 2018. Kreszowski attended the intake assessment at Harbor but informed them that he did not want treatment. Kreszowski did not submit his Harbor assessment to FCA. He submitted no documentation stating he was able to return to work in compliance with the fitness examination, nor did he provide documentation by a licensed

6

psychiatrist to substantiate continued entitlement to benefits under FCA's sickness and accident plan. He did not submit any substantiation for his absence to FCA after July 25, 2018.

On October 22, 2018, Kreszowski filed his third OCRC complaint against FCA alleging disability discrimination and retaliation. He asserted that FCA "would not accept Harbor Health's diagnostic and assessment that there was no need for future psychiatric services." 3:19-cv-2989, DE 1-1, OCRC 2018 Charge, Page ID 13.

Kreszowski did not return to work at FCA, and on March 18, 2019, FCA sent Kreszowski a letter explaining that he had been absent from work since October 27, 2017, and the reason for his absence no longer had current justification. The letter from FCA is known as a "five-day letter" requiring "satisfactory evidence as to the reason for your absence" pursuant to the collective bargaining agreement. 3:19-cv-2989, DE 16-8, Price Decl., Page ID 103. For an employee to provide satisfactory evidence, he must submit a dated medical statement signed by his physician that details a statement of the disability, the diagnosis, the dates of treatment, and the physician's contact information. FCA offers a form to employees that includes a list of all required information. On March 22, 2019, within the five-day period specified by FCA's letter, Kreszowski appeared at FCA's employment office with the assessment from Harbor. Kreszowski made multiple phone calls that morning to various FCA employees and Union members to attempt to present medical records. Larry Price and Mark Epley met Kreszowski at the employment office window; Price rejected the offered medical records and Kreszowski was asked to leave the property. Price reviewed the Harbor assessment and determined that it did not contain the information required for an employee to be reinstated and would not be accepted as satisfactory evidence as to the reason for Kreszowski's absence.

On March 26, 2019, FCA sent Kreszowski a letter stating that "[a]s a result of [his] failure to return to work when called, as instructed in our previous letter, [his] seniority is terminated as of 03/25/2019." 3:19-cv-2989, DE 16-8, Price Decl., Page ID 109. The letter explained the reason for termination was because FCA did not receive satisfactory evidence as to the reason for Kreszowski's absence.

Kreszowski sued FCA and the Union in November 2017, alleging unlawful termination, disability discrimination, and retaliation in violation of federal and state law. In July 2019, the Union and FCA moved for summary judgment. The district court held Kreszowski did not establish a prima facie case of disability discrimination by either FCA or the Union. The district court also rejected Kreszowski's claim that FCA retaliated against him, holding that Kreszowski could not establish a causal connection between his protected activity and the purported adverse actions. The court granted FCA's and the Union's motions for summary judgment.

Kreszowski sued FCA again in December 2019, alleging unlawful termination, disability discrimination, and retaliation in violation of federal and state law. In June 2020, FCA moved for summary judgment. Kreszowski then filed a motion pursuant to Federal Rule of Civil Procedure 56(d) requesting a continuance to conduct discovery before the court ruled on the motion for summary judgment. The district court denied Kreszowski's motion. . . . The court granted FCA's summary judgment motion in July 2021, finding that Kreszowski did not establish a prima facie case of

disability discrimination by FCA. The court also rejected Kreszowski's retaliation claim, holding that Kreszowski could not establish a causal connection between his protected activity and the purported adverse actions. Kreszowski appeals the district court's denial of his discovery motion and its grants of summary judgment to FCA and the Union.

*Kreszowski*, 2022 WL 782664 at *1–5 (footnotes omitted).

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### IV. ANALYSIS

#### A. DISABILITY DISCRIMINATION

Kreszowski asserts UAW Local 12 discriminated against him because it perceived him as disabled and failed to properly advocate for him.[1] An employee may be "regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). In pursuing a perceived-disability discrimination claim, Kreszowski first must put forward a prima facie case by showing: (a) UAW Local 12 "treated him as having an impairment that substantially limits one or more of his

---

[1] As before, "federal caselaw interpreting federal employment discrimination statutes applies to employment discrimination claims under Ohio law." *Kreszowski v. FCA US LLC*, No. 3:17-CV-2371, 2021 WL 3166871, at *7 (N.D. Ohio July 27, 2021) (citing cases).

9

major life activities"; (b) he was otherwise qualified for his position; and (c) UAW Local 12 failed to adequately represent him because it regarded him as disabled. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). UAW Local 12 is entitled to summary judgment on Kreszowski's disability discrimination claims because Kreszowski cannot establish his prima facie case.

Kreszowski argues the following facts demonstrate UAW Local 12 regarded him as disabled: (1) Epley, his union representative, "treated Mr. Kreszowski as if he had a medical condition for which he needed to 'get better'"; and (2) members of the international union, namely Harvey Hawkins and Mark Dickow, "viewed [Kreszowski] as mentally unstable," thus perceived him to be disabled, and then shared their views with members of UAW Local 12. (Doc. No. 72 at 6). Neither of these creates a genuine dispute of material fact as to whether UAW Local 12 regarded Kreszowski as disabled.

First, Kreszowski's characterization of Epley's statement and state-of-mind directly conflicts with both my earlier rulings and the Sixth Circuit's affirmance. The Sixth Circuit held Epley's comment was not proof UAW Local 12 regarded Kreszowski as disabled because "a 'perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled.'" *Kreszowski*, 2022 WL 782664 at *8 (*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)). The Sixth Circuit's conclusion that this statement was not evidence of a perceived disability was necessary to support its conclusion that UAW Local 12 was entitled to summary judgment on Kreszowski's disability discrimination claims. He cannot relitigate that matter in this case. *See Montana*, 440 U.S. at 153.

Kreszowski's characterization of the deposition testimony of Hawkins and Dickow fares no better. Kreszowski asserts Hawkins "believed Mr. Kreszowski was out of touch with reality." (Doc. No. 72 at 6). During his deposition, Hawkins was asked about an email Hawkins wrote to Kreszowski:

10

> Q. This first top email here, the last paragraph of it, where the paragraph that starts half way down, you wrote here, if you continue to revile the UAW, then it proves you refuse to accept indisputable truth that we are representing your grievance and you have the inability to comprehend reality and reason. Did you believe he was out of touch with reality this point?
>
> A. Without a doubt, okay.

(Doc. No. 63 at 11).

Viewed in the light most favorable to Kreszowski, Hawkins' answer could be construed as a belief that Kreszowski had an impairment which substantially limited one or more of his major life activities. But Hawkins was not a member of UAW Local 12 at the time he sent the email and Kreszowski fails to connect Hawkins' statement to any member of UAW Local 12. While Hawkins acknowledged having conversations with Epley about Kreszowski's case, and there is evidence Hawkins forwarded voicemails Kreszowski left him to Epley and Simms, Kreszowski does not identify any evidence that Epley, Simms, or any other member of UAW Local 12 even knew of Hawkins' belief that Kreszowski "was out of touch with reality," much less that anyone in UAW Local 12 adopted that belief as their own. And Kreszowski does not provide any legal support for his implicit argument that Hawkins' belief, on its own, could be attributed a local union of which he was not a member. (*See* Doc. No. 76 at 5-6).

Dickow's testimony does not help Kreszowski either. Dickow also stated in an email that he thought Kreszowski had an issue with reality. (Doc. No. 74 at 14). When asked what he meant by the comment, Dickow stated:

> Every phone call that I have made to Mr. Kreszowski, or received from him, the conversation would be civil. And then in warp's speed it would be combative where he is yelling at me trying to destroy my demeanor or call me corrupt and he didn't even know me. So it got to a point where it was very contentious. And most often than not, I would just hang up the phone on him because that wasn't part of my job to be abused by the members. I gave him several opportunities to have respectful conversations and it wouldn't take but a heartbeat for them to turn sideways. And I wasn't going to let him try to discredit me or anything like that. Like I said, he doesn't even know me.

11

(*Id.*).

Dickow then was asked if he raised any concerns about Kreszowski's mental stability in his conversations with Epley and Simms. Dickow stated:

> Like I said, I'm not a physician, nor a psychiatrist, so I can't make that determination. The only thing that was consistent in what I'm saying to you now, every conversation that individuals that I have spoken to seemed to be, they were all combative with Mr. Kreszowski where he'd make accusations of you're corrupt, you're this, you're that.

(*Id.* at 17). Dickow concluded this portion of his deposition testimony by stating that he had never heard "any other UAW member, either . . . Local 12 or International, either in person or on the phone or in writing, refer to Mr. Kreszowski as unstable or having mental issues." (*Id.* at 18).

As with Hawkins, Dickow's testimony could suggest he regarded as Kreszowski as having a mental impairment, but Kreszowski again cannot connect Dickow's thoughts to any member of UAW Local 12. Kreszowski's contention that Dickow testified that Simms and Epley "had the same concerns regarding Mr. Kreszowski's mental state, namely his stability," is not an accurate reading of Dickow's deposition testimony. (Doc. No. 76 at 6). Dickow made clear that the "concerns" Simms and Epley shared involved the fact that every conversation with Kreszowski was "combative." (Doc. No. 74 at 17-18). As I noted above, Dickow affirmatively stated he have never heard a member of UAW Local 12 refer to Kreszowski "as unstable or having mental issues." (*Id.* at 18).

Because Kreszowski has not identified evidence sufficient to create a genuine dispute of material fact as to whether UAW Local 12 regarded Kreszowski as having an impairment that substantially limited one or more of his major life activities, I need not address the parties' other arguments. I conclude UAW Local 12 is entitled to judgment as a matter of law on Kreszowski's disability discrimination claims.

B.     RETALIATION

Kreszowski also asserts UAW Local 12 retaliated against him for engaging in conduct protected by the ADA. Because he relies on circumstantial evidence, Kreszowski first must establish a prima facie case of retaliation by showing: "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)).

UAW Local 12 assumes Kreszowski can establish that it knew he had engaged in protected activity but argues he cannot show UAW Local 12 took an adverse action against him or that there was a causal connection between his protected activity and any adverse action.[2] (Doc. No. 75 at 13-16). Kreszowski claims UAW Local 12 took adverse action against him by refusing various grievances on his behalf and that these actions were casually connected to his protected activity. (Doc. No. 76 at 6-10). Even if I assume Kreszowski has identified an adverse action taken against him, I conclude Kreszowski fails to show there is a genuine dispute of material fact as to the existence of a causal connection between his protected activity and any adverse action and that UAW Local 12 is entitled to judgment as a matter of law.

Kreszowski offers two arguments in an attempt to satisfy the causal connection element of his prima facie case. The first is that he was treated "differently from identically situated

---

[2] UAW Local 12 contends Kreszowski abandoned this claim by not including any discussion of it in his motion for summary judgment. (Doc. No. 77 at 15). This argument is not persuasive. Kreszowski argued his retaliation claim should not be dismissed in his brief opposing UAW Local 12's motion for summary judgment. (*See* Doc. No. 76 at 13-15). His decision not to move for summary judgment on that claim does not mean he has abandoned it. *See, e.g.*, *Brown v. VHS of Mich., Inc.*, 545 F. App'x. 368, 372 (6th Cir. 2013) (explaining that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").

13

employees." (Doc. No. 76 at 13). According to Kreszowski, he was treated differently from other UAW members because UAW Local 12 did not lodge a protest letter with FCA after his termination as required by the Collective Bargaining Agreement. (*Id.* at 13-14). He asserts that, under the CBA, the local union representative should take the first step of filing a protest letter within 72 hours of the termination because "in some cases the protest letter has caused management to back off without having to go through the grievance process." (*Id.* at 14).

"'[T]o be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Novotny v. Elsevier*, 291 F. App'x 698, 703–04 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (further citation omitted).

Kreszowski has not pointed to evidence to satisfy any of these requirements. He has not identified another individual employee with whom he seeks to compare himself, referencing only "other UAW members." Without identifying another employee, Kreszowski cannot show that employee dealt with the same supervisor, were subject to the same standards, or engaged in the same conduct.[3]

Kreszowski's second argument is that he can establish the causal connection element through temporal proximity. (Doc. No. 76 at 14). He contends "the union failed to protest Mr. Kreszowski's termination at the same time his depositions/discovery in *Kreszowski I* was occurring." (*Id.*). But in this instance, Kreszowski's protected activity was <u>filing</u> his lawsuit, not <u>maintaining</u> it.

---

[3] Because Kreszowski fails to point to any evidence in support of this argument, I need not consider the parties' arguments regarding whether UAW Local 12 had any established practice regarding the use or nonuse of protest letters. For that reason, I deny Kreszowski's motion for leave to file a reply brief. (Doc. No. 78).

Kreszowski's 2019 case illustrates this point. In that case, Kreszowski's protected activity was his "2018 OCRC charge, in which he alleged that FCA discriminated against him because of a perceived disability by denying approval for him to return to work and requiring him to attend a psychiatry appointment." *Kreszowski*, 2022 WL 782664 at *9. The Sixth Circuit held "the five months between [Kreszowski's] October 2018 OCRC charge and the March 2019 termination of his seniority is 'little more than coincidence, which is insufficient on its own to show causation.'" *Id.* at *10 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)). Thus, it was Kreszowski's <u>filing</u> of that charge, and not the duration of those administrative proceedings, that satisfied the protected-activity element of his prima facie case. Similarly, the fact that Kreszowski may have been engaged in discovery on his 2017 case at the time of the March 2019 seniority termination does not establish a causal connection between two events that occurred 14 months apart.

When "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Kreszowski has not pointed to any evidence to show that his protected activity was a but-for cause of UAW Local 12's failure to submit a protest letter concerning the termination of his seniority prior to filing a grievance seeking to reinstate his seniority. Therefore, Kreszowski fails to show there is a genuine dispute of material as to this required element of his prima facie case, and I conclude UAW Local 12 is entitled to summary judgment on his retaliation claim.

## V. CONCLUSION

For the reasons stated above, I grant UAW Local 12's motion for summary judgment, and deny Kreszowski's motion for summary judgment, on Kreszowski's discrimination and retaliation claims. (Doc. Nos. 71 and 75). I also deny Kreszowski's motion for leave to file a reply brief.

(Doc. No. 78). Finally, I deny Defendant's initial summary judgment motion, (Doc. No. 70), as moot.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge

16